**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| LANDSCAPE CONSULTANTS OF TEXAS, INC., | Civil Action No. |
| Plaintiff, | |
| v. | |
| HARRIS COUNTY, TEXAS; and the HARRIS COUNTY COMMISSIONERS COURT, | **VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |
| Defendants. | |

## INTRODUCTION

1.     The "core purpose" of the Equal Protection Clause is to eliminate the government's ability to racially discriminate—racial classifications are "by their very nature odious to a free people whose institutions are founded upon the doctrine of equality." *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 206, 208 (2023) (*SFFA*) (quotation omitted). For this reason, the Equal Protection Clause forbids the government from engaging in race-based discrimination. And "eliminating racial discrimination means eliminating all of it." *SFFA*, 600 U.S. at 206–08.

2.     Harris County sees things differently. Since 2020, it has maintained a race-conscious discriminatory public contracting policy. Instead

1

of enacting policies that eliminate discrimination, Harris County perpetuates it.

3.    This is an Equal Protection Clause challenge to that discriminatory policy—Harris County's Minority- and Woman-Owned Business Enterprise (MWBE) Program. This racially discriminatory MWBE Program treats companies bidding for public contracts differently based on the race of the company's owner, giving preferential treatment to businesses owned by individuals from its preferred races.

4.    Plaintiff Landscape Consultants of Texas, Inc. (Landscape Consultants) is a Houston-area family business with approximately fifty employees. Since Harris County's MWBE policy was implemented, Landscape Consultants has been at a significant disadvantage when bidding on landscaping contracts.

5.    That is because although approximately 95% of Landscape Consultants' employees are racial minorities, its owners are not. Harris County's MWBE policy does not consider these minority employees. Instead, it places Landscape Consultants at a competitive disadvantage just because its owners are not of a preferred race. Picking winners and losers based on race violates the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution.

2

## JURISDICTION AND VENUE

6.    Landscape Consultants brings this civil rights lawsuit pursuant to 42 U.S.C. § 1983, for the violation of rights secured by the Fourteenth Amendment to the United States Constitution, and 42 U.S.C. § 1981, for the violation of the right to contract without respect to race.

7.    This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 (federal question) and 1343 (civil rights). Declaratory relief is authorized by the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202.

8.    Venue is appropriate under 28 U.S.C. § 1391(b)(1) and (2) because all Defendants reside in this district and a substantial part of the events or omissions giving rise to the claims occurred and continue to occur in this district.

## PARTIES

9.    Plaintiff Landscape Consultants of Texas, Inc., is a Texas corporation with its principal place of business in Spring, Texas. Landscape Consultants does not qualify as an MWBE in Harris County because it is not majority owned, managed, and controlled by a "socially disadvantaged individual" or by a woman. Landscape Consultants has won multiple landscaping contracts offered by Harris County since 2006. It remains qualified, willing, and able to bid on Harris County contracts in the future.

3

10. Defendant Harris County is a political subdivision of the State of Texas. The County is a "person" subject to suit under 42 U.S.C. § 1983.

11. Defendant Harris County Commissioners Court is the administrative body of Harris County, Texas. It is also a "person" subject to suit under 42 U.S.C. § 1983.

## FACTUAL ALLEGATIONS

### Plaintiff Landscape Consultants of Texas

12. Landscape Consultants is a family business that has been owned by Gerald and Theresa Thompson since 2006. The Thompsons, who are white, each own 50% of the company.

13. Landscape Consultants' approximately 50 employees provide landscaping services to clients across the Houston metro area, including irrigation installation, landscape design, and routine maintenance.

14. Contracts with local government agencies, counties, and municipalities make up 80–90% of Landscape Consultants' annual revenue.

15. Landscape Consultants has a long and successful relationship with Harris County; it has won multiple contracts since 2006, with a combined value of approximately $12–16 million.

16. For example, Landscape Consultants' valuable track record with Harris County includes a $1.5 million tree planting and maintenance contract,

a $250,000 contract to maintain between 40 and 80 county parks (which Landscape Consultants won twice), and a five-year, $1.2 million contract to maintain county-owned buyout lots.

17.     Landscape Consultants is currently performing multiple ongoing contracts for Harris County and is bidding on or awaiting the County's decision on additional recent bids.

### The 2020 Disparity Study

18.     On June 30, 2020, the Commissioners Court adopted an MWBE program framework created by consulting firm Colette Holt & Associates.

19.     The framework, presented in Colette Holt & Associates' 2020 disparity study, recommended that Harris County implement a race- and gender-conscious MWBE program with an annual, overall target for MWBE participation in county contracts. It also recommended Harris County adopt specific MWBE goals for individual contracts and a race-based mentor-protégé program.

20.     The disparity study suggested that Harris County should set its annual, overall MWBE goal at 28.4 percent—the "weighted availability of M/WBEs."

21.    The study also recommended that "all racial and ethnic groups and White women be eligible for participation in the program on a presumptive basis."

22.    While over 25% of Harris County's 4.7 million residents were born outside of the United States and over 145 languages are spoken within the county, the disparity study used only five broad racial and ethnic categories: black, Hispanic, Asian, Native American, and white women, as well as the even more broad "M/WBE" and "non-M/WBE."

23.    The disparity study examined just three years of county-funded contract data and concluded that a "substantively significant" disparity existed for all groups except non-MWBEs.

24.    When determining how many MWBE firms are available to contract with Harris County, the study did not consider a firm's capacity, willingness to bid on Harris County contracts, or history of bidding on previous Harris County contracts.

25.    The disparity study is based in part on anecdotes. The study does not indicate what percentage of those interviewed were MWBEs or non-MWBEs.

26.  The disparity study does not identify specific instances of intentional race or sex-based discrimination in Harris County public contracting.

27.  The disparity study does not identify Harris County officials, staff, or other employees who discriminated against MWBEs in the award of county contracts.

28.  The disparity study does not provide evidence of Harris County's active participation in race or sex-based discrimination in the award of county contracts.

### Harris County's MWBE Ordinance

29.  Harris County adopted the Colette Holt & Associates recommended policy on November 10, 2020. The policy became Harris County's first-ever Minority- and Woman-Owned Business Enterprise Program. *See* HCC 15D *et seq*.

30.  The adopted MWBE policy has three stated goals: (1) "to ensure competitive business opportunities for small, minority- and woman-owned business enterprises in the award and performance of County contracts"; (2) "to prohibit discrimination on the basis of race, ethnicity, or sex in the award of, or participation in, County contracts"; and (3) "to abolish barriers to

full participation in County contracts by all persons, regardless of race, ethnicity, or sex." HCC 15D.

*Eligible Businesses*

31.    Only certified minority-owned and women-owned businesses are eligible to fulfill a contract's MWBE goal. HCC 15D § VI(A).

32.    Harris County's MWBE ordinance defines "minority" as "Black Americans, Hispanic Americans, Native Americans, Asian-Americans, or other Minorities as defined in the Disparity Study." *Id.* § II.

33.    The 2020 disparity study provides no other definition of "minority."

34.    A "minority business enterprise" (MBE) is a

> for-profit small business concern that is at least 51 percent owned by one or more individuals who are socially disadvantaged; whose management and daily business operations are controlled by one or more of the socially and economically disadvantaged individuals; which has a place of business located within the County's Marketplace; and which is Certified.

*Id.*

35.    The terms "economically disadvantaged" and "socially disadvantaged" are not defined in the County's policy. *Id.*

*MWBE Certification*

36.    Harris County does not offer its own MWBE certification process; instead, the County accepts certifications from several local, state, and national entities, including the City of Houston, the National Minority

8

Supplier Development Council, the Houston Minority Supplier Development Council, and the State of Texas Comptroller's Office.

37.    Certification requires a business to meet specific standards for ownership, control, and day-to-day management of the business, as well as size and geographic restrictions.

38.    To become a certified MBE through the City of Houston, a business must prove that it is at least 51% owned, managed, and controlled by individuals who are black, Hispanic, Asian-Pacific American, or Native American.

39.    The business must also maintain a significant local presence in Harris, Austin, Brazoria, Chambers, Fort Bend, Galveston, Liberty, Montgomery, San Jacinto, or Waller Counties, and meet the Small Business Administration's size standards.

40.    Similarly, to become certified as a Historically Underutilized Business through the State of Texas Comptroller's Office, a business must prove that it is at least 51% owned and controlled day-to-day by Texas residents who are Asian-Pacific American, black, Hispanic, Native American, women, or 20% service-disabled veterans.

41.    The business must be primarily based in Texas and meet size standards set by state law.

42. Landscape Consultants does not qualify as an MBE through any of these certifying entities because it is not at least 51% owned by individuals who are black, Hispanic, Asian-Pacific American, or Native American.

43. Landscape Consultants does not qualify as a WBE through any of these certifying entities because it is not at least 51% owned by a woman. Furthermore, although Theresa Thompson is a woman who owns 50% of the company, she does not control or manage the day-to-day operations of the company.

*MWBE Contract Goals*

44. The 2020 disparity study recommended that Harris County set its annual, overall MWBE goal at 28.4%, which the disparity study's authors concluded was the "weighted availability M/WBEs" in Harris County, "or a figure rounded to a whole number."

45. Following this recommendation, Harris County's MWBE ordinance requires an annual MWBE "aspirational" goal of 30% of total County spending on public contracts. HCC 15D § V.

46. To meet this "aspirational" goal, the County imposes mandatory MWBE utilization goals on individual County contracts. HCC 15 § VI(B).

47. These individual contract goals are "based upon the percentage availability of at least three Certified MBEs and three Certified WBEs to

10

perform the anticipated scopes of work of the entire contract, the County's utilization of MBEs and WBEs to date, the County's progress towards meeting the Annual Aspirational Goal, and other relevant factors." *Id.*

*Sunset Provision*

48.     The MWBE policy sunsets on November 10, 2025, unless renewed by the Commissioners Court. HCC 15D § X.

49.     The County is required to perform a new disparity study prior to the sunset date. *Id.*

50.     To prepare for renewal, Harris County is currently commissioning a new disparity study.

51.     A Request for Proposals for the new disparity study closed on December 9, 2024.

52.     The Commissioners Court approved the new disparity study project for advertisement and consented to the Request for Proposals at its meeting on December 10, 2024.

## Bidding for Harris County Contracts

53.     The MWBE policy is administered by the Department of Economic Equity and Opportunity (DEEO), which has primary responsibility for implementing and administering the MWBE program. HCC 15D § III.

54. The DEEO Director reports directly to the Commissioners Court. *Id*.

55. When bidding on a Harris County contract, bidders must include a "utilization plan" that demonstrates how the bidder will meet the contract's MBE goal or proves that it made good faith efforts to meet the MWBE goal. *Id*. § VI(D).

56. Bids that do not include a utilization plan are considered non-responsive and rejected. *Id*.

57. MWBE bidders may meet a contract's MWBE goal by self-performing the entire value of the contract. *Id*. § VI(C)(1), (2).

58. Bidders who are not MWBEs, like Landscape Consultants, can only meet a contract's MWBE goal by subcontracting with one or more MWBEs, entering into a joint venture with a MWBE, or directly purchasing materials or services from MWBEs. *Id*. § VI(C).

59. To determine whether a bidder made good faith efforts to meet a contract's MWBE goals, DEEO considers whether the bidder: (1) attended the pre-bid conference conducted by Harris County to "acquaint Prime Contractors with MBEs and WBEs available to provide relevant goods and services"; (2) solicited MWBEs through "reasonable and available means" like written notices and advertisements at least 15 calendar days before the bid is due;

(3) provided timely and adequate information about the contract and "[f]ollowed up initial solicitations to answer questions and encourage" MWBEs to submit bids; (4) negotiated in good faith with interested MWBEs; (5) selected or broke out portions of the contract so that they can be performed by available MWBEs, "even when the Bidder would prefer to perform those scopes with its own forces"; (6) made efforts to assist MWBEs in obtaining required bonding, lines or credit, or insurance; and (7) used the services of DEEO and a list of other MWBE assistance groups to recruit MWBEs. *Id*. § VI(D).

60.     Successful bidders who do not fulfill a contract's MWBE goal or prove sufficient good faith efforts are subject to severe penalties, including termination of the contract, denying or limiting credit towards the contract goal, withholding progress payments, liquidated damages, and debarment from future County contracting opportunities. *Id*. § VIII.

### How the MWBE Policy Harms Landscape Consultants

61.     Since implementing the MWBE policy, MWBE utilization goals are now included in most, if not all, of the Harris County contracts that Landscape Consultants is considering bidding on.

62.     MWBE utilization goals cost Landscape Consultants income through lost contracts or diminished profits and risk the company's vitally important bonding capability.

13

*Lost Income*

63. The contracts Landscape Consultants bids on with Harris County are typically evaluated on a low-bid basis.

64. To meet MWBE utilization goals, Landscape Consultants must price its bids higher than it otherwise would to compensate for the percentage of each contract that must be subcontracted to an MWBE.

65. If Landscape Consultants does not raise its bid price, the cost of subcontracting with an MWBE comes out of Landscape Consultants' income.

66. Landscape Consultants' MWBE competitors, in contrast, do not have to compensate for subcontracted work, putting Landscape Consultants at a competitive pricing disadvantage in a low-bid evaluation process.

67. For example, Landscape Consultants recently completed a large, multi-year contract with the Harris County Toll Road Authority. The contract was subject to renewal every year.

68. When Landscape Consultants began the contract in 2020, the contract was not subject to an MWBE utilization goal, nor was an MWBE goal required when the contract was renewed for years 2 through 4. Landscape Consultants' employees performed all of the contract work during this time.

69. When the contract was due to be renewed for year 5, Harris County imposed an 11% MWBE goal in order for the contract to be renewed.

70. Landscape Consultants subcontracted with an MWBE subcontractor to bid on the contract renewal, but the increased bid pricing meant Landscape Consultants was not the lowest bidder.

*Bonding Risk*

71. Harris County also requires bidders like Landscape Consultants to submit bid and performance bonds.

72. This bonding requirement does not apply to subcontractors.

73. Landscape Consultants spent years building up its credit and reputation to qualify for bonds that will cover multi-million-dollar contracts like those it bids on with Harris County.

74. When Landscape Consultants is forced to subcontract to fulfill an MWBE goal—particularly with subcontractors it has no relationship with—it takes the significant risk that the subcontractor's misconduct could revoke Landscape Consultants' bonds.

75. Having its bonds called in for failure to perform on a contract would almost certainly put Landscape Consultants out of business.

76. MWBE contractors, who are not required to rely on subcontractors to fulfill MBE goals, do not face such risks. Landscape Consultants would not face this risk were it not for the MWBE utilization goals that require it to use subcontractors.

*A Spreading Problem*

77.    Landscape Consultants is confronting MWBE utilization goals in contracts that did not previously have them.

78.    For example, Landscape Consultants held a contract to maintain Harris County cemeteries with no MWBE goal, but approximately three years ago it was rebid with a 10–12% MWBE goal.

79.    Other multi-year contracts that Landscape Consultants held were renewed early in order to incorporate new MWBE goals, including contracts to maintain Harris County parks, toll roads, county buildings in downtown Houston, county buyout lots, and Precinct 2 landscape and irrigation maintenance services.

80.    Harris County also finances a Disparity Study Fund Program, which allocates $200,000 for independent school districts and community colleges in Harris County to conduct disparity studies with the goal of implementing their own MWBE programs.

81.    The County lists 34 government entities, 33 cities, and 29 school districts/community colleges eligible for its Disparity Study Fund Program.

82.    Despite the significant harm caused by the MWBE policy, Landscape Consultants continues to bid on Harris County contracts due to the

County's significant share of the public sector market in the Houston metro area.

83.   Landscape Consultants has no plain, speedy, and adequate remedy at law for this violation of its right to equal protection. Damages are indeterminate or unascertainable and would not fully redress Landscape Consultants' harm.

## CLAIMS FOR RELIEF

## FIRST CAUSE OF ACTION

### Violation of the Equal Protection Clause of the Fourteenth Amendment, through 42 U.S.C. § 1983

84.   Landscape Consultants alleges and incorporates by reference the allegations in the preceding paragraphs of this Complaint.

85.   Defendants Harris County and the Harris County Commissioners Court are "persons" within the meaning of 42 U.S.C. § 1983. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 663 (1978).

86.   Defendants have acted and are acting "under color of state law" within the meaning of section 1983.

87.   Defendants' MWBE policy treats businesses differently based on the race of their owners.

17

88. Because Defendants' MWBE policy grants special preferences to businesses based on the race of the business owner, it must satisfy strict scrutiny.

89. Defendants do not have a compelling governmental interest that justifies the MWBE policy's racial classifications.

90. Defendants lack a strong basis in evidence that its MBE goals are related to remedying the past or present effects of racial discrimination in any particular industry or in the County.

91. The MWBE policy's racial classifications are not narrowly tailored to meet any such compelling interest.

92. Because Defendants' MWBE program uses racial classifications to award public contracts, furthers no compelling interest, and is not narrowly tailored, it violates the Equal Protection Clause.

93. Pursuant to the MWBE policy, Defendants use race as a negative when evaluating bids.

94. Pursuant to the MWBE policy, Defendants stereotype individuals and businesses on the basis of race.

95. Landscape Consultants has been harmed in the past, and unless enjoined by this Court, will continue to be harmed in the future by Defendants' MWBE policy.

96. Accordingly, Landscape Consultants is entitled to injunctive and declaratory relief.

## SECOND CAUSE OF ACTION

### Violation of Landscape Consultants' Equal Rights Under the Law, through 42 U.S.C. § 1981

97. Landscape Consultants alleges and incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint.

98. Landscape Consultants is a person within the meaning of 42 U.S.C. § 1981.

99. Defendants' MWBE policy intentionally discriminates on the basis of race in violation of 42 U.S.C. § 1981 by advantaging some businesses over others based on the race of their owners.

100. The MWBE policy's racial discrimination concerns Landscape Consultants' ability to make and enforce contracts with Defendants for landscaping services.

101. The MWBE policy's granting of preferential treatment on the basis of race denies Landscape Consultants the full and equal benefit of the laws within the meaning of 42 U.S.C. § 1981.

102. Landscape Consultants is entitled to injunctive and declaratory relief.

## PRAYER FOR RELIEF

WHEREFORE, Landscape Consultants respectfully requests that the Court:

1.    Declare Defendants' MWBE policy unconstitutional under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. §§ 1981 and 1983;

2.    Permanently enjoin Defendants from operating the MWBE program or using similar racial preferences in the award of public contracts;

3.    Issue an award of attorneys' fees and costs in this action pursuant to Federal Rule of Civil Procedure 54(d) and 42 U.S.C. § 1988; and

4.    Provide such other and further relief as the Court deems just and proper.

DATED: February 5, 2025.

Respectfully submitted,

/s/ Erin E. Wilcox

Laura M. D'Agostino*
*Of Counsel*
D.C. Bar No. 241868
Pacific Legal Foundation
3100 Clarendon Blvd.
Suite 1000
Arlington, VA 22201
Telephone: (202) 888-6881
Fax: (916) 419-7747
LDAgostino@pacificlegal.org

*\*Pro Hac Vice forthcoming*

Erin E. Wilcox
*Attorney-in-Charge*
Cal. Bar No. 337427
S.D. Tex. Bar No. 3369027
Pacific Legal Foundation
555 Capitol Mall
Suite 1290
Sacramento, CA 95814
Telephone: (916) 419-7111
Fax: (916) 419-7747
EWilcox@pacificlegal.org

*Counsel for Plaintiff*

20

## VERIFICATION

I, Gerald Thompson, declare as follows:

1.    I am the President of Landscape Consultants of Texas, Inc.

2.    I have personal knowledge of Landscape Consultants of Texas, Inc., and its activities, including those set out in the foregoing *Verified Complaint for Declaratory and Injunctive Relief*, and if called upon to testify I would competently testify as to the matters stated therein.

3.    I verify under penalty of perjury under the laws of the United States of America that the factual statements in this *Verified Complaint for Declaratory and Injunctive Relief* concerning Landscape Consultants of Texas, Inc., are true and correct.

Executed this ____4th____ day of February, 2025.

_____
Gerald Thompson